OPINION
On January 9, 1998, appellee, John E. Guthmann, filed a complaint to determine parentage and establish a parent/child relationship with Phelicia Guthmann born May 24, 1994. Mother of the child is appellant, Julie Spence. Subsequent testing determined that appellee had a 99.94% probability of being the biological father of the child. On July 14, 1998, appellee filed a request for trial to establish orders such as child support and parental rights. A hearing before a magistrate was held on August 10, 1998. By decision filed December 3, 1998, the magistrate established a parent/child relationship between the child and appellee, set child support and established a visitation schedule. Both parties filed objections to the decision. Upon review, the trial court remanded the matter to the magistrate for further information regarding appellee's driving privileges. By memorandum to the court filed February 16, 1999, the magistrate informed the trial court that appellee had full driving privileges. During the pendency of the objections before the trial court, appellant relocated with the child to North Carolina. As a result, on March 4, 1999, appellee filed a motion to supplement the record. By judgment entry filed April 7, 1999, the trial court granted the request and remanded the matter back to the magistrate to hear additional evidence in light of appellant's move to North Carolina. Hearings were held on June 25, 1999 and August 14, 1999. By decision filed September 28, 1999, the magistrate set forth a revised child support order and visitation schedule. Both parties filed objections to the decision. On August 8, 2000, the trial court issued an opinion regarding the parties' respective objections. A final judgment entry was filed on September 12, 2000. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT APPELLANT'S REQUEST TO CHANGE THE CHILD'S NAME.
 II. THE TRIAL COURT ERRED WHEN IT ORDERED APPELLANT TO PROVIDE OR REIMBURSE APPELLEE FOR TRAVEL EXPENSES AND/OR GRANTED APPELLEE A DEVIATION FROM THE CHILD SUPPORT GUIDELINES AMOUNT.
 III. THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE UNRESTRICTED VISITATION.
 IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT THE RIGHT TO PRESENT ADDITIONAL EVIDENCE AFTER THE MAGISTRATE OBTAINED EX PARTE COMMUNICATIONS REGARDING APPELLEE'S DRIVING PRIVILEGES.
 V. THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE THE RIGHT TO CLAIM THE CHILD FOR INCOME TAX EXEMPTION PURPOSES AND REQUIRING APPELLANT TO AMEND HER TAX RETURN.
 I
Appellant claims the trial court erred in denying her request to change the child's name. We disagree. The leading case on this issue is Bobo v. Jewell (1988), 30 Ohio St.3d 330. In Bobo at paragraph two of the syllabus, the Supreme Court of Ohio held the following: In determining the best interest of the child concerning the surname to be used when parents who have never been married contest a surname, the court should consider: the length of time that the child has used a surname, the effect of a name change on the father-child relationship and on the mother-child relationship, the identification of the child as part of a family unit, the embarrassment, discomfort or inconvenience that may result when a child bears a surname different from the custodial parent's, the preference of the child if the child is of an age and maturity to express a meaningful preference and any other factor relevant to the child's best interest. Court should consider only those factors present in the particular circumstances of each case.
Because this issue must be decided on a case by case basis, the trial court's decision will not be reversed absent an abuse of discretion. In re Jane Doe 1 (1990), 57 Ohio St.3d 135. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. The child sub judice is now six years old and has been known by appellee's surname since appellant placed the name on the child's birth certificate. October 6, 1998 T. at 23, 40; June 25, 1999/August 14, 1999 T. at 50. The child is enrolled in school and is known by appellee's name. June 25, 1999/August 14, 1999 T. at 342. Despite appellant's claim of appellee's bad reputation, the child is not growing up in the same community as appellee. Upon review, we find these factors squarely fulfill those enumerated in Bobo. We find no abuse of discretion by the trial court in denying the name change request. Assignment of Error I is denied.
 II
Appellant challenges the trial court's decisions on child support and reimbursement for travel expenses. Appellant claims the trial court deviated from the child support guidelines without explanation and without accounting for the travel reimbursement. We disagree. In preparing the child support worksheet, the trial court at line 3 failed to make any adjustment for the travel expense reimbursement. However, the trial court was cognizant of this failure and in its opinion filed August 8, 2000 provided for further review after six months: In order to justify the expense of this endeavor, the Court finds it necessary to reduce the plaintiff's child support obligation to $155.25 per month plus processing costs until the six month visits to North Carolina are completed. Once the six month visits are completed the full child support obligation shall be implemented.
The effective date of the child support order of $155.25 per month plus processing costs shall be one week after the filing date of the entry.
The Court determines that in view of the plaintiff's inability to have parenting times without the cost of traveling to North Carolina, the child support order must have a deviation. The $250.00 per month for travel and phone expenses are reasonable.
For those periods where defendant is required to travel to Ohio, the plaintiff shall be required to pay the one-third. Any monies paid less than $250.00 shall be sent to the defendant directly unless the defendant does not make the child available and, in that case, no monies will be sent to defendant by plaintiff.
For example, if plaintiff's travel expenses to North Carolina total $250.00 or more, no monies will be sent. If they are $210.00, he would send forty dollars. If defendant's travel expenses total $420.00 and plaintiff is responsible for one-third or $140.00, he will forward $110.00 to defendant in addition to the child support order. Again unless defendant fails to make the child available.
Upon review, we cannot find such a detailed explanation as given by the trial court in conjunction with a six month review was an abuse of discretion nor a violation of Marker v. Grimm (1992), 65 Ohio St.3d 139. Assignment of Error II is denied.
 III
Appellant claims the trial court abused its discretion in permitting appellee unrestricted visitation after a one year restricted period. We disagree. In its decision filed September 28, 1999, the magistrate specifically addressed the issue of appellee's sobriety as follows: Factor (7) is a concern for the Magistrate. At least for a period of time the child needs protection from the potential that the plaintiff has to cause some problems for her through his major lapses in judgment. Even though the plaintiff's last drunk driving charge was over three years ago it is still a concern since the last one did involve the child directly.
In its opinion filed August 8, 2000, the trial court further addressed the issue by providing for supervised visitations and counseling: Therefore the Court directs that this Court's Investigator shall contact the North Carolina authorities and see if there is a private agency that can stand in as a supervisory authority so that the plaintiff may travel to North Carolina to see the child. The costs of travel and supervision shall be paid by the plaintiff. If no agency is available, the plaintiff's mother should be the supervisor.
Upon review, we concur with the trial court's moderation in setting a year of supervised visitations. If any issues arise, the trial court has retained sufficient control over the matter to address further visitations. Assignment of Error III is denied.
 IV
Appellant claims the trial court erred in denying her the opportunity to provide additional information on appellee's driving record. We disagree. By opinion filed February 10, 1999, the trial court specifically instructed the magistrate to "review plaintiff's assertions under oath as to the validity of his driving privileges and, if found to be inaccurate, to determine if the matter should be referred to the Licking County Prosecutor's Office for possible perjury charges." The magistrate in response did not conduct a hearing or receive evidence as is evidenced by the Memorandum to the Court filed February 16, 1999: On February 10, 1999, the Magistrate was requested to provide information to the court on the status of the plaintiff's privileges to operate a motor vehicle. The Magistrate inquired of Vanessa Stalnaker, the court liaison officer with the Adult Probation Department of the Licking County Municipal Court. A records check was done by that organization, as the defendant has been on probation with them. The results are, that as of February 11, 1999, the plaintiff has complete driving privileges.
Appellant argues the magistrate did not give her an opportunity to cross-examine any witnesses nor to delve into any inconsistencies in appellee's statements and the truth of the matter concerning appellee's driving privileges. Although all of appellant's assertions are correct, we fail to find any undue prejudice to appellant nor any abuse of discretion. As noted supra, the trial court permitted supervised visitations for one year. If any issues arise as to driving privileges, they can be addressed by the supervisor of the visitations or by further recourse to the trial court. Assignment of Error IV is denied.
 V
Appellant claims the trial court did not follow the dictates of Singer v. Dickinson (1992), 63 Ohio St.3d 404, in determining who should receive the tax exemption for the child. We agree. In Singer at paragraph three of the syllabus, the Supreme Court of Ohio held the following: In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates.
Because the trial court did not engage in the analysis required by Singer, we find the trial court erred in granting the tax exemption to appellee. Assignment of Error V is granted. The judgment of the Court of Common Pleas of Licking County, Ohio, Domestic Relations Division is hereby affirmed in part, reversed in part and remanded.
Farmer, J. Edwards, P.J. and Gwin, J. concur.