Marker, Appellee, *v.* Grimm, Appellant.

[Cite as *Marker v. Grimm* (1992), 65 Ohio St.3d 139.]

(No. 91–1672—Submitted September 22, 1992—Decided November 25, 1992.)

*Ohio State Legal Services Association* and *Michael R. Smalz; Southeastern Ohio Legal Services* and *Gary M. Smith,* for appellant.

*Advocates for Basic Legal Equality, Inc.* and *William H. Fraser,* urging reversal for *amicus curiae,* Association for Children and the Enforcement of Support.

DOUGLAS, J.   Today, we consider R.C. 3113.215, a comprehensive enactment governing the procedures a court must follow in calculating and awarding

child support.[1] Upon reviewing the requirements of the statute and measuring those requirements against the procedure followed by the trial court in this case, we find that the trial court failed to comply with a number of the statutory mandates in ordering the increase in support.

R.C. 3113.215(B)(1) requires that a calculation of the amount of an obligor's child support obligation must be made "in accordance with" the basic child support schedule set forth in R.C. 3113.215(D), the applicable worksheet in R.C. 3113.215(E) or (F), and other requirements of the law. R.C. 3113.215(E) and (F) both provide a sample or "model" worksheet and each provision directs the court to "use a worksheet that is identical in content and form" to the applicable model provided. R.C. 3113.215(B)(1) further provides that the amount calculated using the schedule and worksheet (through line 18 of the worksheet) is "rebuttably presumed" to be the correct amount of child support due and that that amount must be ordered to be paid *unless* both of the following apply:

"(a) The court, after considering the factors and criteria set forth in division (B)(3) of this section, determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, would be unjust or inappropriate and would not be in the best interest of the child.

"(b) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination."

Thus, the acceptable procedure for ordering an amount of child support which deviates from the amount "rebuttably presumed" to be the correct amount due is for the court to *fully* comply with the requirements of R.C. 3113.215(B)(1)(a) and (b). The importance of strict compliance with these deviation procedures becomes all the more apparent upon a reading of R.C. 3113.215(B)(2)(c) and, specifically, R.C. 3113.215(B)(2)(c)(i) and (ii), which repeat, verbatim, the requirements of R.C. 3113.215(B)(1)(a) and (b).

It is obvious from the statutory scheme of R.C. 3113.215 that the overriding concern of the law is "the best interest of the child" for whom support is being awarded. This fact is evident from R.C. 3113.215, where the phrase "best interest of the child[ren]" is used thirteen times. To ensure the best

---

1. Although a former version of R.C. 3113.215 was considered by the trial court in this case (143 Ohio Laws, Part IV, 5997–6018), we consider the *current* version of the statute since the minor changes and revisions in the law do not affect any of the issues in this appeal.

interest of children, the General Assembly enacted comprehensive legislation outlining the specific procedures to be followed to meet this overriding interest of the law. The statute is written in terms which are mandatory in nature, and when the standard provision for support as provided in the statute is not specifically followed by the trial court, the law requires any such deviation to be explicitly explained after following specific procedures.

With the foregoing discussion and the requirements of R.C. 3113.215 in mind, we turn to the procedures followed by the trial court in this case in ordering appellant to pay $300 per month in child support.

As a threshold matter, we note that the record before us does not contain a completed child support computation worksheet. In this regard, a review of R.C. 3113.215 leads us to the conclusion that the statute *mandates* that a court "use" a worksheet identical in content and form to the R.C. 3113.215(E) or (F) model worksheet, and that the amount of an obligor's child support obligation must be calculated "in accordance with," and "pursuant to," the basic child support schedule and appropriate worksheet. In our judgment, these mandates very clearly indicate that a worksheet must *actually* be completed for the order or modification of support to be made. The responsibility to ensure that the calculation is made using the schedule and worksheet rests with the trial court. R.C. 3113.215(B)(1) provides that the court, in performing its duties under the statute, is not required to accept any calculations *in a worksheet prepared* by any party to the action or proceeding. As R.C. 3113.215 requires the applicable worksheet to be completed, there is every reason to require that the trial court include that document in the record. Only in this fashion can appellate courts be assured that the *literal* requirements of R.C. 3113.215 have been followed, and that an order or modification of support is subject to meaningful appellate review.

Accordingly, we hold that a child support computation worksheet required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215 must actually be completed and made a part of the trial court's record. Here, if the applicable worksheet was completed, it was not included in the record and, thus, we are left to speculate as to how the court determined that $300 was the appropriate amount of child support.

Moreover, based upon the record before us, it would appear that the trial court did not use or even consult a worksheet in its calculation of support. For instance, the transcript of the July 30, 1990 motion hearing is devoid of any information concerning many of the items necessary to complete a worksheet. Further, appellant claims that neither party submitted or was

asked to submit a worksheet or the information necessary to complete one. The terms of R.C. 3113.215 are very specific and are mandatory in nature, and the trial court's failure to comply with the *literal* requirements of the statute constitutes reversible error.

Finally, from a reading of the transcript of the July 30 hearing, it appears that the trial court considered appellant's income to be $30,000 for purposes of determining the amount of child support due.[2] The basic child support schedule in R.C. 3113.215(D) provides that for $30,000 of "combined gross income" with one child the amount due is $4,560 in annual child support—or $380 per month—when the *proper procedures* for calculating support are followed. At the hearing, the trial court referred to the schedule or "guidelines" and indicated that appellant was being treated considerately by the court because the schedule provided for an amount of $380 per month, not the $300 per month the court ordered appellant to pay. However, the trial court did not explain at the hearing, or later, in its entry, why $300 per month was the appropriate and just amount due. Thus, the record before us suggests that the trial court not only ignored the worksheet and calculation requirements of R.C. 3113.215, but further sought to deviate from whatever procedure was used and, in addition, failed to enter in its journal findings of fact supporting its determination that a deviation from the basic child support schedule and worksheet was warranted. See R.C. 3113.215(B)(1) and (B)(2)(c).

Again, the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects. Further, any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination.

The General Assembly enacted comprehensive legislation aimed at providing uniform, consistent and fair support obligations to protect Ohio's children from insufficient and inequitable child support orders. It is the duty of this court and the other courts of this state to adhere to the dictates of the General Assembly and to strictly comply with the provisions of the statute.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand this cause to the trial court to conduct a new evidentiary hearing. Upon remand, the trial court should calculate and award support in accor-

---

2. We assume that the $30,000 was "potential income" the trial court imputed to appellant (see R.C. 3113.215[A][5]) based upon appellant's statement that if he were fully employed as a professional in his field of endeavor, he would hope to earn at least $30,000 per year.

dance with the procedures set forth in R.C. 3113.215 and explain, in its journal entry, any deviation from the basic child support schedule and worksheet.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., concurring. I am in agreement with the majority that the computation worksheet provided for in R.C. 3113.215 must be completed by the trial court and made part of the record for purposes of review of the court's child-support determinations. I, therefore, join in the syllabus and the body of this opinion, but I feel it necessary to add a few comments regarding the duties of the trial court in this type of case. This matter upon remand, and all factors being considered, could reasonably result in more, or less, support as previously ordered by the trial judge.

As stated by the majority, the provisions of the statute, including the schedule and the worksheets set forth therein, must be followed, or the reasons for any deviations from such guidelines must be entered in the court's journal.

First, in computing child support in a given case the trial court must determine the gross income of the parent if fully employed; or if the parent is not employed or underemployed, the gross income from any source, except as specifically excluded by the statute, and any potential income of such parent. R.C. 3113.215(A)(1) and (2). In considering the *potential* income from such parent, the trial court, pursuant to R.C. 3113.215(A)(5), must first find the parent to be voluntarily unemployed or voluntarily underemployed, and then determine the amount the parent would have received if fully employed determined from the parent's employment potential and probable earnings based upon the parent's recent work history if any, the parent's occupational qualifications, and the prevailing job opportunities, and salary levels in the community in which the parent resides.

All of these factors must be set forth within the worksheets by the trial court. Such was not done here. Therefore, I join the majority in the remand of this matter to determine, pursuant to the applicable statute and guidelines, whether David Grimm was voluntarily unemployed or voluntarily underemployed, whether he has income from other sources than employment; and if voluntarily unemployed, or voluntarily underemployed, what potential income he would be receiving with his qualifications, job opportunities, and salary levels in the community in which he lives.